UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESTER ROGER DUNCAN, JR.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 3:17-cv-00032-H-NLS<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; and**<br><br>**[Doc. No. 14]**<br><br>**(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 19, 20]** |

On January 9, 2017, Lester Roger Duncan, Jr., ("Plaintiff") filed a complaint against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), seeking judicial review of an administrative denial of disability benefits under the Social Security Act ("the Act"). (Doc. No. 1.) On April 8, 2017, Defendant filed an answer to Plaintiff's complaint, as well as the administrative record soon thereafter. (Doc. Nos. 11, 12.) On May 26, 2017, Plaintiff filed a motion for summary judgment, requesting that the Court reverse the Commissioner's final decision

and remand the case for further administrative proceedings. (Doc. No. 14.) On August 8, 2017, Defendant cross-moved for summary judgment, requesting that the Court affirm the Commissioner's final decision. (Doc. Nos. 19, 20.) For the reasons below, the Court denies Plaintiff's motion for summary judgment, grants Defendant's cross-motion for summary judgment, and affirms the Commissioner's final decision.

## BACKGROUND

On October 9, 2013, Plaintiff applied for disability insurance benefits, claiming a disability onset date of May 29, 2013. (AR 178-79.) The Social Security Administration ("SSA") initially denied Plaintiff's application for benefits on February 13, 2014, and did so again upon reconsideration on April 25, 2014. (AR 90, 100.) On May 8, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 116-17.) On July 20, 2015, an ALJ held a hearing where Plaintiff appeared with counsel and testified. (AR 44-81.) At the hearing, the ALJ also heard testimony from a vocational expert. (AR 72-78)

On September 9, 2015, the ALJ issued a written decision, analyzing Plaintiff's claim and determining that Plaintiff had not met his burden of proof. (AR 25-43.) SSA regulations require ALJs to use the following five-step inquiry when determining whether an applicant qualifies for disability benefits: (1) has the claimant been gainfully employed since the time of the disability onset date; (2) "is the claimant's impairment severe"; (3) "does the impairment 'meet or equal' one of a list of specific impairments described in the regulations," and if not, what is the claimant's residual functional capacity ("RFC")[1]; (4) is the claimant capable of performing past relevant work; and (5) "is the claimant able to do any other work." Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); see 20 C.F.R. § 404.1520(a)(4)(i-v).

Here, the ALJ determined at step one that the Plaintiff had not been gainfully

---

[1] SSA regulations define residual functional capacity as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

employed since the disability onset date of May 29, 2013. (AR 27.) At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the hips, degenerative disc disease, high blood pressure, left shoulder impingement, and a history of fracture on the left side of his head. (AR 27-32.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that amounted to one of the SSA regulations' enumerated impairments. (AR 32-33.) The ALJ then determined that Plaintiff had an RFC to perform "light work," as defined in 20 C.F.R. 404.1567(b), "except he can perform occasional lifting above shoulder level with the nondominant upper extremity." (AR 33.) At step four, the ALJ determined that Plaintiff could perform past relevant work as a dispatcher. (AR 39.) Consequently, the ALJ determined that Plaintiff was not disabled from May 29, 2013, the alleged onset date, through September 9, 2015, the date of the ALJ's decision. (Id.)

On November 18, 2016, the Social Security Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (AR 1.)

## **LEGAL STANDARDS**

### **A. The Social Security Administration's Sequential Five-Step Inquiry.**

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Act. 20 C.F.R. § 404.1520(a)(4)(i-v). To qualify for disability benefits, a claimant must establish that he or she is "disabled," meaning that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

Step one in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." Id. §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments. Id. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The so-called "severity regulation" dictates the ALJ's step-two analysis. Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987). Specifically, an ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, however, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairment is equivalent to one of several enumerated impairments that the SSA deems so severe as to preclude substantial gainful activity. Id. §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled if the impairment meets or equals one of the enumerated impairments. Id.

If the ALJ concludes that a claimant does not suffer from one of the SSA regulations' enumerated severe impairments, the ALJ must determine the claimant's RFC before proceeding to step four of the inquiry. Id. §§ 404.1520(e), 416.920(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. See id. §§ 404.1545(a)(1), 416.945(a)(1). The RFC analysis considers whether the claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." Id. In establishing a claimant's RFC, the ALJ must assess relevant medical and other evidence, as well as consider all of the claimant's impairments, including impairments categorized as non-severe. Id. §§ 404.1545(a)(3-4), (e), 416.945(a)(3-4), (e).

Given the claimant's RFC, the ALJ determines at step four whether the claimant has the RFC to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. Id. Conversely, if the claimant does not have the RFC

4

3:17-cv-00032-H-NLS

to perform his or her past relevant work, or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's inquiry, the ALJ must determine whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. Id. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1). If the claimant is able to do other work, the claimant is not disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). However, if the claimant is not able to do other work and meets the duration requirement of twelve months, the claimant is disabled. Id. Although the claimant generally continues to have the burden of proving disability at step five, a limited burden shifts to the SSA, such that the SSA must present evidence demonstrating that other jobs the claimant can perform—allowing for RFC, age, education, and work experience—exist in significant numbers in the national economy. Tackett, 190 F.3d at 1099.

**B.      Standard of Review.**

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision in a federal district court. See 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security determinations is limited." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). The court will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews, 53 F.3d at 1039). The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's determination. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d

1 at 1222 (quoting <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152 (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Garrison</u>, 759 F.3d at 1010 (quoting <u>Shalala</u>, 53 F.3d at 1039).

Even if the ALJ commits legal error, a reviewing court will uphold the decision where that error is harmless—that is, where the error is "inconsequential to the ultimate nondisability determination." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." <u>Id.</u> at 1111 (quoting <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009)).

## **DISCUSSION**

Plaintiff moves for summary judgment on three grounds, arguing that: (1) the ALJ improperly evaluated Plaintiff's alleged mental impairment by failing to apply the de minimis standard; (2) substantial evidence did not support the ALJ's RFC determination because the ALJ omitted consideration of Plaintiff's alleged mental impairment and did not accept state agency experts' opinions regarding Plaintiff's alleged limitations related to his mental impairment; and (3) the ALJ improperly made an adverse credibility determination against Plaintiff. (Doc. No. 14.) Defendant cross-moves for summary judgment on three grounds, namely that: (1) the ALJ appropriately evaluated Plaintiff's mental impairment by applying the "special technique"; (2) the ALJ was not required to include Plaintiff's alleged mental impairment in the RFC assessment and properly evaluated the experts' opinions; and (3) substantial evidence supported the ALJ's credibility determination. (Doc. No. 19.) For the following reasons, the Court denies Plaintiff's summary judgment motion and grants Defendant's cross-motion.

### A. The ALJ Properly Evaluated Plaintiff's Mental Impairment as Non-Severe Pursuant to the Special Technique.

Plaintiff claims that the ALJ erred by failing to apply the de minimis standard when evaluating Plaintiff's alleged mental impairment. (Doc. No. 14-1 at 5-6.) Defendant argues that the ALJ correctly applied the "special technique." (Doc. No. 19-1 at 7.)

The ALJ determines whether the claimant has any severe physical or mental impairments at step two of the disability evaluation. Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In evaluating the severity of mental impairments, specifically, the ALJ must follow the special technique—not simply the de minimis test. See id. § 404.1520a(a); Keyser v. Comm'r, Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). The special technique is used to: (1) "Identify the need for additional evidence to determine impairment severity; (2) Consider and evaluate functional consequences of the mental disorders relevant to [the claimant's] ability to work; and (3) Organize and present [the SSA's] findings in a clear, concise, and consistent manner." 20 C.F.R. § 404.1520a(a)(1)-(3).

Under the special technique, the ALJ first evaluates the objective medical evidence to determine whether the claimant has a medically determinable mental impairment. Id. § 404.1520a(b)(1). If the ALJ determines that there is a medically determinable mental impairment, the next step is to rate the degree of functional limitation resulting from that impairment. Id. § 404.1520a(b)(2). In assessing the degree of functional limitation caused by the mental impairment, the ALJ considers how the impairment interferes with the following functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. See id. § 404.1520a(b)(2), (c)(3); 20 C.F.R., pt. 404, subpt. P, app. 1 § 12.00; Keyser, 648 F.3d at 725. The ALJ rates the degree of limitation in each of these areas as either none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates all of these areas with a limitation of either none or mild, then the ALJ may conclude that the mental impairment is not severe. See id. § 404.1520a(d)(1).

The ALJ must document the application of the special technique in his or her written decision. Id. § 404.1520a(e). This includes incorporating into the decision the pertinent findings and medical evidence that support the ALJ's conclusion about the functional limitations resulting from each mental impairment. Id. § 404.1520a(e)(3). Additionally, the ALJ must specify his or her findings as to the degree of limitation in each of the

7

functional areas described above. Id. § 404.1520a(e)(4).

Here, in his written decision, the ALJ evaluated Plaintiff's mood disorder and determined that it did not cause more than a minimal limitation. (AR 28-29.) In making this finding, the ALJ evaluated the four functional areas detailed in the special technique for evaluating mental impairments. (Id.) In each of these functional areas, the ALJ assigned no more than a "mild" limitation. (Id.)

In the first functional area, daily living, the ALJ determined that Plaintiff had no limitations. (AR 28.) Highlighting evidence that Plaintiff was involved in a ten-month religious education program, participated in his church community, and had several hobbies, the ALJ concluded that Plaintiff's mental impairment did not restrict his daily activities. (Id.) In the second functional area, social functioning, the ALJ determined that Plaintiff had no limitations. (Id.) Despite Plaintiff's allegations that he did not function generally or leave his apartment, the ALJ determined that the record reflected normal social function. (Id.) Plaintiff was heavily involved in his religious community, went on a camping trip, and played in a local band. (Id.) The ALJ concluded that, contrary to Plaintiff's testimony, Plaintiff's mental impairment did not restrict his ability to maintain social function. (Id.)

Similarly, in the third functional area—concentration, persistence, or pace—the ALJ determined that Plaintiff had no limitations. (AR 28-29.) Although Plaintiff claimed that he loses track of time easily, cannot stay focused, and cannot read or check his computer for more than 10 to 15 minutes at a time, Plaintiff had participated in a ten-month religious education program where he was required to attend class five days a week for four hours a day, which necessitated reading and preparing for class. (AR 28.) Plaintiff also testified that he uses his computer to check emails and do online shopping. (Id.) Based on this evidence, as well as on an "unremarkable" mental health examination in March 2015, the ALJ concluded that Plaintiff's mental impairment did not restrict his ability to maintain concentration, persistence, or pace. (AR 28-29.)

In the fourth functional area, decompensation (defined as "temporary increases in

symptoms . . . accompanied . . . by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace"), the ALJ determined that Plaintiff's mental impairment had not caused extended episodes of decompensation. (AR 29.) 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00. There are no indications in the record of hospitalization due to psychiatric or psychological issues. (Id.)

In sum, the ALJ properly evaluated Plaintiff's alleged mental impairment according to the special technique procedure. See 20 C.F.R. § 404.1520a; 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00; Keyser, 648 F.3d at 725. In his written decision, the ALJ evaluated each of the four broad functional areas and assigned no limitation to each area. (AR 28-29.) Further, the ALJ supported each determination with pertinent evidence from the record. (Id.) Having determined that Plaintiff's mood disorder caused no more than a mild limitation to each functional area, the ALJ properly concluded that the mental impairment was non-severe. (AR 28.) Additionally, in making his determination, the ALJ reviewed Plaintiff's treatment history concerning his mood disorder and the opinions of state agency medical experts Dr. Sandip Sen and Dr. J. Flock, both of whom considered the impairment non-severe. (AR 29-32.) Accordingly, the ALJ correctly applied the appropriate analytical framework to evaluate Plaintiff's mental impairment.

**B.     Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination.**

Plaintiff claims that substantial evidence does not support the ALJ's RFC determination for two reasons: (1) the ALJ erred by failing to incorporate Plaintiff's mental impairment in the RFC, and (2) the ALJ improperly evaluated the medical opinions of the state agency psychological experts. (Doc. No. 14-1 at 15-22.) The Court addresses each argument in turn.

**1.     The ALJ Properly Incorporated Plaintiff's Mental Impairment into the RFC and, in the Alternative, Any Error from the ALJ's Failure to Do So Was Harmless.**

In determining a claimant's RFC, the ALJ must assess all relevant medical and non-

medical evidence in addition to any limitations from the claimant's impairments, including impairments categorized as non-severe. 20 C.F.R. § 404.1545(a)(3), (e). Although a non-severe impairment "standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2, 1996).

The ALJ's RFC assessment is adequate if it captures all of the claimant's restrictions that are consistent with the medical record. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). An omission of a non-severe impairment will not require reversal of the ALJ's RFC assessment if that omission was harmless, i.e., "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Hurter v. Astrue, 465 F. App'x. 648, 652-53 (9th Cir. 2012) (mem.).

Here, Plaintiff argues the ALJ erred by excluding Plaintiff's non-severe mental impairment from the RFC assessment. In making the RFC determination, the ALJ found that Plaintiff has an underlying mental impairment that could reasonably cause the alleged symptoms (an inability to concentrate, anxiety, and depression). (AR 36.) But after reviewing the evidence, the ALJ found that the record did not support Plaintiff's statements regarding the alleged severity of his symptoms. (AR 34-36.) The ALJ ultimately concluded that Plaintiff's statements were "not fully credible." (AR 34.) In support of this credibility determination, the ALJ cited inconsistencies between the alleged severity of Plaintiff's symptoms and Plaintiff's reported daily activities. (Id.) The ALJ, however, then failed to consider explicitly Plaintiff's non-severe mental impairment in the RFC determination. (AR 38-39.)

Nevertheless, the Court concludes that the ALJ's omission of the non-severe mental impairment does not require reversal of the RFC assessment because any error was harmless. See Hurter, 465 F. App'x. 648 at 652 (citing Stout, 454 F.3d at 1054-55). First, the ALJ did discuss Plaintiff's alleged mental impairment immediately before determining

the RFC, (see AR 33-36), all of which appears under a single, RFC-specific heading, (see AR 33). It is thus reasonable to infer that the ALJ considered, albeit implicitly, Plaintiff's non-severe mental impairment at the time he determined the RFC. Furthermore, earlier in his decision, at step two, the ALJ took pains to contrast the "special technique" analysis (see Section A, *supra*) with the "more detailed assessment" of mental impairment required for the RFC. (See AR 29.) The recognition of this distinction indicates that the ALJ's later analysis of Plaintiff's mental impairment was designed to address the RFC. (See AR 33-36.)

Moreover, Plaintiff's testimony and the medical evidence did not bear out the alleged severity of Plaintiff's symptoms related to the alleged mental impairment. (See AR 28, 34.) Plaintiff claimed that he suffered from poor concentration, anxiety, and depression, (AR 28-29), but he had attended an intensive 10-month religious education program and was heavily involved in his religious community. (AR 28.) The evidence further indicated that Plaintiff had hobbies, including camping and playing guitar in a local band, and that he had been exercising. (AR 28.) The ALJ discussed this evidence in detail at step two when classifying Plaintiff's mental impairment as non-severe, (AR 27-32), and did so again at step five, (see AR 35 ("I find the claimant's ability to participate in the aforementioned activities diminishes the credibility of the claimant's allegations of functional limitations.")). In short, the record did not suggest that Plaintiff's alleged mental impairment limits him beyond the exertional limitations of light work contemplated in the RFC. Accordingly, the RFC adequately captures all of Plaintiff's restrictions that are consistent with the medical record. See Stubbs-Danielson, 539 F.3d at 1174.

Thus, considering the meager evidentiary support for the severity of Plaintiff's symptoms, any error related to the ALJ's failure to explicitly consider Plaintiff's mental impairment in the RFC determination was harmless, because it was irrelevant to the ultimate disability determination. See Stout, 545 F.3d at 1055; Hurter, 465 F. App'x. at 652-53.

//

## 2. The ALJ Properly Evaluated the State Agency Experts' Medical Opinions.

The ALJ will evaluate all received medical opinions in determining the claimant's RFC. 20 C.F.R. § 404.1527(c). A medical opinion is a statement from an acceptable medical source about, inter alia, "what [claimants] can still do despite [their] impairment(s)." Id. § 404.1527(a)(1). Generally, the ALJ gives more weight to opinions from treating sources than from non-treating sources. Id. § 404.1527(c)(1)-(2). If the treating source's opinion is well supported "by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other evidence in the record, then the ALJ may give it controlling weight. Id. § 404.1527(c)(2). In cases where the ALJ does not give a treating source controlling weight, non-treating, non-examining physicians may provide substantial evidence to support the ALJ's findings. See Thomas, 278 F.3d at 957. In determining how much weight to give non-controlling medical opinions, the ALJ considers: (1) the extent of the medical examination; (2) how much the opinion is supported and explained by evidence in the record; (3) how consistent the medical opinion is with the record as a whole; (4) whether the opinion comes from a specialist; and (5) other factors that support or contradict the medical opinion. See 20 C.F.R. § 404.1527 (c)(1)-(6). The ALJ must consider evidence from prior state agency medical consultants as appropriate and give weight according to the standards stated above. Id. § 404.1513a(b)(1). State agency medical consultants are considered to be "highly qualified and experts in Social Security disability evaluation." Id.

Here, the ALJ gave significant, but not full, weight to the medical opinions of two state agency experts: Dr. Sen and Dr. Flocks. (AR 32.) Dr. Sen and Dr. Flocks were the state agency mental medical consultants in Plaintiff's case on initial review and on reconsideration, respectively. (Id.) Both experts opined that Plaintiff's mental impairment imposed mild restrictions on his activities of daily living, ability to maintain social functioning, and ability to concentrate, persist, and pace himself. (AR 32, 87, 97.) Ultimately, however, both experts opined that the mental impairment was not severe. (AR

32, 89, 98.)

The ALJ assigned significant, but not full, weight to the state agency experts' opinions because the experts based their opinions on an incomplete record. (AR 32.) Specifically, Plaintiff's testimony about his daily activities (e.g., Plaintiff's testimony that he was involved in his Church community, attended religious classes, and played in a band) and additional medical evidence were unavailable at the time the experts opined on Plaintiff's functional limitations. (Id.) This additional evidence was inconsistent with the experts' opinions that Plaintiff had minimal limitations. (Id.) The consistency of a medical opinion with the record as a whole is one of the factors that an ALJ considers when assigning weight to that opinion. See 20 C.F.R. § 404.1527(c)(3) ("[The ALJ] will evaluate the degree to which [non-controlling] medical opinions consider all of the pertinent evidence in [the disability] claim."); id. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."). Because the state agency experts' medical opinions were inconsistent with the later-obtained evidence of Plaintiff's level of functioning and daily activities, the ALJ properly assigned significant, but not full weight, to the experts' opinions.

Nevertheless, Plaintiff claims that, because the ALJ assigned significant weight to the state agency experts' opinions, the ALJ cannot exclude from the RFC the experts' opinions that Plaintiff had mild limitations. (AR 19.) This argument is without merit.

It is the ALJ's task to sort through "conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings," which the ALJ did here. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998). The ALJ clearly explained that certain portions of the state agency experts' opinions were consistent with the record as a whole, including Plaintiff's "limited mental health treatment and lack of objective findings to corroborate his alleged mental symptoms and limitations," while other portions were not—to wit, the experts' conclusions regarding Plaintiff's alleged functional limitations. (AR 32.) It was proper to award less than full weight to the inconsistent portions of the experts' opinions. See 20 C.F.R. § 404.1527(c)(3), (4). And to the extent that portions of the state agency

experts' opinions conflict with the RFC assessment, the ALJ adequately explained why the conflicting portions were not adopted. See SSR 96-8p, 1996 WL 374184, at *7; Reddick v. Chater, 157 F.3d at 725.

Accordingly, there was no error in excluding from the RFC determination the state agency experts' opinion regarding Plaintiff's mild functional limitations. The Court concludes that substantial evidence supports the ALJ's determination of Plaintiff's RFC.

### C. Substantial Evidence Supports the ALJ's Credibility Determination.

Plaintiff claims that, in determining the credibility of Plaintiff's testimony, the ALJ improperly failed to consider Plaintiff's "stellar" work history. (Doc. No. 14-1 at 22.) The Court concludes, however, that substantial evidence supports the ALJ's credibility determination. (AR 31, 34-36.)

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must initially determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation omitted).

> When an [ALJ] determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [he or] she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.

Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). The ALJ may consider the factors listed in Social Security Ruling 88-13, which include:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

To permit meaningful judicial review of a credibility determination, the ALJ must "specify which testimony [he or she] finds not credible, and then provide clear and convincing reasons supported by evidence in the record to support that credibility determination." Brown-Hunter, 806 F.3d at 488-89. If the ALJ provides some valid reasons, the court will uphold the ALJ's credibility determination. See Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining ALJ's citation to erroneous reasons is harmless if the "ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record") (emphasis omitted).

Here, the ALJ determined that Plaintiff's testimony about the severity of his symptoms was not credible because it was inconsistent with Plaintiff's reported daily activities and treatment history. (AR 34.) Plaintiff testified that he rarely leaves his apartment and has trouble concentrating and keeping track of time. (AR 28, 62-63.) But Plaintiff also testified that he attended religious classes, plays in a band, and is actively involved in his church community. (AR 28-29, 66, 69-71, 471.) The ALJ properly considered Plaintiff's reported daily activities when evaluating the credibility of Plaintiff's testimony. See Burch, 400 F.3d at 680. Additionally, the medical records show that, after being prescribed medication for his mood disorder, Plaintiff began feeling better. (AR 272-74, 295-96, 321-22.) Medication, treatments, and other methods of alleviating symptoms are factors the ALJ may take into account when evaluating Plaintiff's credibility regarding his symptoms' severity. 20 C.F.R § 404.1529(c)(3)(iv), (v). The ALJ also discussed Plaintiff's inconsistent statements regarding the reason why he claimed he was unable to work. (AR 31.)

Accordingly, because the ALJ stated specific, valid reasons for discrediting Plaintiff's testimony, the Court affirms the ALJ's credibility determination. See Carmickle, 533 F.3d at 1162. The fact that the ALJ did not consider Plaintiff's work history does not disturb that conclusion.

//

## CONCLUSION

For the foregoing reasons, the Court concludes that (1) the ALJ properly evaluated Plaintiff's mental impairment as non-severe pursuant to the special technique, (2) substantial evidence supports the ALJ's RFC determination, and (3) substantial evidence supports the ALJ's credibility determination. Therefore, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** Defendant's cross-motion for summary judgment, and **AFFIRMS** the ALJ's order.

**IT IS SO ORDERED.**

DATED: December 7, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT